[No. B006417. Second Dist., Div. Five. Apr. 23, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHNNY PARTNER, Defendant and Appellant.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Michael Tanaka, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Andrew D. Amerson and Terry T. Fujimoto, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ASHBY, J.—By jury trial appellant was convicted of first degree murder, robbery, and of the special circumstance that the murder was committed during the commission of robbery. In addition, the jury found true the allegations of use of a firearm and infliction of great bodily injury. In accordance with the jury verdict on the penalty phase of trial, appellant was sentenced to imprisonment for life without possibility of parole.

On June 18, 1983, the victim, Rafael Vasquez, was walking through the Jordan Downs Housing Project in South Central Los Angeles when he was robbed and killed by appellant.

Several witnesses observed all or part of the killing. Stated in the light most favorable to the judgment the evidence indicates that as the victim was walking between buildings, appellant, carrying a gun in his waistband, came around a corner and confronted him. Mancylen Brown saw appellant draw his gun and heard appellant say, "Your money or your life." The victim tried to turn around and walk away, but appellant grabbed him around the waistband and held the gun to the victim's neck. The victim said something, then appellant shot him in the neck. The gun was in contact with the neck when it was fired, and the bullet traveled at a slightly downward angle, severing the spinal column and causing death within four minutes from respiratory failure.

The victim fell to the ground. Patricia McDowell saw appellant turn the victim over and remove a black leather wallet from the victim's rear pocket. Two other witnesses also saw appellant remove a wallet from the victim's pocket. Appellant then ran away.

Appellant testified in his own defense, admitting the shooting but denying the robbery.

On appeal he raises several issues, none of which has merit.

### DEATH QUALIFIED JURORS

█ Appellant contends the trial court erred in excluding from the jury those jurors who stated they could never vote to impose the death penalty. This issue is well settled against appellant's position by binding opinions of the California Supreme Court. (*People* v. *Fields* (1983) 35 Cal.3d 329, 353 [197 Cal.Rptr. 803, 673 P.2d 680]; *People* v. *Montiel* (1985) 39 Cal.3d 910, 920 [218 Cal.Rptr. 572, 705 P.2d 1248]; *People* v. *Anderson* (1985) 38 Cal.3d 58, 60 [210 Cal.Rptr. 777, 694 P.2d 1149].)

### REQUEST FOR NONJURY TRIAL

█ Appellant's next contention is, "Appellant was denied the equal protection of law when the court denied his motion to waive jury trial and be tried by the court." Appellant wanted to waive jury trial but the prosecutor demanded the People's right to jury trial.

█ The People have a fundamental right to jury trial, secured by article I, section 16 of the California Constitution which provides that trial by jury is an inviolate right and shall be secured to all, and may be waived in a criminal case only "'by the consent of both parties . . . .'" (*People* v. *Washington* (1969) 71 Cal.2d 1061, 1086-1087 [80 Cal.Rptr. 567, 458 P.2d

479]; *People* v. *King* (1970) 1 Cal.3d 791, 795-796 [83 Cal.Rptr. 401, 463 P.2d 753]; see also *People* v. *Sims* (1982) 32 Cal.3d 468, 483-484, fn. 13 [186 Cal.Rptr. 77, 651 P.2d 321].) The defendant's constitutional right to a jury trial does not give him a correlative right to demand a trial without a jury. (*People* v. *Washington, supra,* 71 Cal.2d at pp. 1086-1087; *Singer* v. *United States* (1965) 380 U.S. 24, 34 [13 L.Ed.2d 630, 637-638, 85 S.Ct. 783].)

■ Appellant contends that the trial court's denial of appellant's motion to compel a nonjury trial resulted in a different standard being applied to a motion for acquittal at the close of the prosecution case, and that this difference invades his fundamental rights and denies him equal protection of the law. His contention is utterly without merit.

In a jury trial, under Penal Code section 1118.1, a defense motion for acquittal at the close of the prosecution case could be granted only if the evidence is insufficient to sustain a conviction on appeal.[1] The trial judge does not weigh the credibility of the prosecution evidence, for that would invade the province of the jury which is the trier of fact. (See *People* v. *Wong* (1973) 35 Cal.App.3d 812, 827, 828 [111 Cal.Rptr. 314].) In a court trial, on the other hand, for reasons of judicial economy Penal Code section 1118 permits the trial judge to grant a defense motion for acquittal at the close of the prosecution case "if the court, upon weighing the evidence then before it, finds the defendant not guilty of such offense or offenses."[2] Appellant argues, "A defendant in a court trial gains the benefit of having the trier of fact evaluate the credibility of the witnesses and of having the case against him proved beyond a reasonable doubt before he is required to put on a defense. Thus, if the prosecution has not proved its case at that point, the defendant need not worry about proving up part of the prosecution case during the defense."

---

[1]Penal Code section 1118.1 provides: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

[2]Penal Code section 1118 provides: "In a case tried by the court without a jury, a jury having been waived, the court on motion of the defendant or on its own motion shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading after the evidence of the prosecution has been closed if the court, upon weighing the evidence then before it, finds the defendant not guilty of such offense or offenses. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

Although this distinction exists, it is a reasonable accommodation between judicial efficiency and preservation of the factfinding function of the jury in a case where one of the parties has demanded a jury trial. There is no merit to appellant's contention that this distinction invades any fundamental rights of the defendant so as to require "strict scrutiny" for purposes of equal protection analysis and a "compelling" justification by the People. (Citing *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 597 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) Appellant never successfully identifies a fundamental right which is violated by the statutory distinction. The basic difference between the two statutes is that in a court trial the defendant gets a peek at the tentative *thinking* of the trier of fact before he puts on a defense. While this might be the fulfillment of a defense attorney's fondest dreams, it is hardly a fundamental right. It bears no resemblance to the fundamental rights directly affected in cases cited by appellant.[3] Appellant's assertion that his "right to present a defense as well as his right to testify were significantly diminished" is simply without foundation. The statutes are identical in preserving the defendant's right to present evidence. (See fns. 1, 2, *ante.*) Appellant and his counsel had full opportunity to hear and evaluate all the evidence before presenting whatever defense they wished. Appellant was not subjected to different standards of proof, as intimated by his citation of cases involving civil commitment. Whether by court trial or jury trial, appellant could not be convicted except by evidence sufficient to prove guilt beyond a reasonable doubt.

Appellant also requested in the alternative that if there were a jury trial, the jury should be instructed to bring in a tentative verdict at the close of the prosecution case. This suggestion, which involves practical considerations not present in a court trial, should be addressed to the Legislature. Appellant has cited no authority which would require such a departure from established procedure.

---

[3]*People* v. *Olivas* (1976) 17 Cal.3d 236, 251 [131 Cal.Rptr. 55, 551 P.2d 375], involved sentencing disparity between juveniles and adults. *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 592-593 [150 Cal.Rptr. 435, 586 P.2d 916], held that an indicted defendant, as compared with a defendant charged by information and who receives a preliminary hearing, was denied "'such fundamental rights as counsel, confrontation, the right to personally appear, the right to a hearing before a judicial officer, and the right to be free from unwarranted prosecution. . . .'" *Brooks* v. *Tennessee* (1972) 406 U.S. 605 [32 L.Ed.2d 358, 92 S.Ct. 1891], involved a statute which barred a defendant from taking the stand, unless he testified as the first defense witness, without the opportunity to hear the testimony of his other defense witnesses. *Washington* v. *Texas* (1967) 388 U.S. 14 [18 L.Ed.2d 1019, 87 S.Ct. 1920], involved a statute which barred a coparticipant in crime from testifying on behalf of the defendant. *United States* v. *Jackson* (1968) 390 U.S. 570 [20 L.Ed.2d 138, 88 S.Ct. 1209], involved a provision that the death penalty could be imposed only upon a jury trial. *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], involved a jury instruction that the failure of a defendant to testify could support an inference of guilt.

## JAIL LAW LIBRARY

■ Appellant next contends the trial court erred in refusing to order jail custodians to grant jail law library privileges to appellant. Appellant was represented by counsel, but requested a court order allowing him to use the jail library in order "to assist counsel and to better follow the proceedings." The court looked into the matter and then denied the request. The court learned that it was not the policy of the jail custodians to grant library privileges unless the defendant is in propria persona status.

*In re Harrell* (1970) 2 Cal.3d 675, 695 [87 Cal.Rptr. 504, 470 P.2d 640], holds that an inmate has no right to use of a law library except as necessary to insure access to the courts. Since appellant was adequately "represented by counsel, and no showing was made that counsel needed his assistance in researching the law, the trial court did not abuse its discretion in denying [appellant] permission to use the law library." (*People* v. *Rhinehart* (1973) 9 Cal.3d 139, 150 [107 Cal.Rptr. 34, 507 P.2d 642].)

Appellant argues the court did not exercise discretion individual to the case but rather "blind adherence to the jail's established policy." This adds nothing to the force of appellant's argument. Since appellant was represented by counsel and there was no showing that counsel needed his assistance in researching the law, there was nothing wrong with the jail's established policy nor does the record establish any error.

## JURY NULLIFICATION

■ During jury deliberations the jury inquired of the court, "Can we have robbery and murder in the second degree." The trial court answered the question simply and directly, in effect stating that the answer is yes if the killing did not occur as a result of the commission or the attempt to commit the crime of robbery.[4]

Citing Justice Kaus's concurring opinion in *People* v. *Dillon* (1983) 34 Cal.3d 441, 490-493 [194 Cal.Rptr. 390, 668 P.2d 697], appellant contends the court should have interpreted this question as an attempt by the jury to avoid the felony-murder rule and should have instructed the jury on "the power of a jury to nullify what it considers an unjust law." (*Id.,* at p. 491.) There is no merit to this contention. Justice Kaus's view was not joined by any other of the justices of the court, and was expressly rejected in the lead

---

[4]The court stated, "The answer is yes, if the jury determines that the killing . . . did not occur as a result of the commission or attempt to commit the crime of robbery, and the jury determines that the perpetrator did not have the specific intent to commit the crime of robbery until after the fatal shot was fired."

opinion. (*Id.*, 34 Cal.3d at pp. 487-488, fn. 39.) Moreover, as is apparent from the authorities cited in footnote 3 of Justice Kaus's opinion (*id.*, at p. 491, fn. 3), the courts which have recently considered the question have uniformly concluded that although a jury may occasionally exercise a raw power to return a verdict more favorable to the defendant than warranted by the evidence and the law, this power should not be legitimized in instructions to the jury.

We agree that the jury should not be instructed on so-called jury nullification. "'[A] jury, in rendering a general verdict in a criminal case, necessarily has the naked *power* to decide all the questions arising on the general issue of not guilty; but it only has the *right* to find the facts, and apply them to the law as given by the court.'" (*People* v. *Powell* (1949) 34 Cal.2d 196, 205, fn. 2 [208 P.2d 974], first italics in original, second italics ours.)

The jury should not be instructed that it may disregard the law. (See *People* v. *Gottman* (1976) 64 Cal.App.3d 775, 781-782 [134 Cal.Rptr. 834].) ■ ■ ■ ■ "An explicit instruction to a jury conveys an implied approval that runs the risk of degrading the legal structure requisite for true freedom, for an ordered liberty that protects against anarchy as well as tyranny." (*United States* v. *Dougherty* (D.C. Cir. 1972) 473 F.2d 1113, 1137.)[5]

### IMPEACHMENT FOR PRIOR FELONY CONVICTION

■ Finally, appellant contends the trial court erred in allowing appellant to be impeached with a prior felony conviction for voluntary manslaughter. The trial court denied appellant's motion to exclude impeachment with the prior, apparently believing that Proposition 8 left it no discretion to do so. After appellant's trial the state Supreme Court decided in *People* v. *Castro*

---

[5]Appellant additionally contends that the second half of the court's response to the jury's question (fn. 4, *ante*) incorrectly defined robbery. He contends that if the intent to steal was not formed until after "the fatal shot was fired" the crime could be grand theft rather than robbery. As he concedes, however, the jury had previously been instructed, at appellant's request, that "[i]f an individual kills or renders another unconscious for reasons wholly unrelated to larceny, such as anger, fear, or revenge and then seeing that his victim has been rendered defenseless decides to take advantage of the situation by stealing some item of value from his person, that offense is not robbery, but grand theft from the person and the felony-murder rule does not apply." (See *People* v. *Carnine* (1953) 41 Cal.2d 384, 388 [260 P.2d 16]; *People* v. *Green* (1980) 27 Cal.3d 1, 53 [164 Cal.Rptr. 1, 609 P.2d 468].) If the court's subsequent response to the jury inquiry created any ambiguity or inconsistency with the prior instruction, it was not prejudicial to appellant, because the instructions must be considered as a whole. The question from the jury did not indicate confusion over the elements of robbery but rather of murder. If the jury had believed that appellant shot first and formed the intent to steal afterward, the jury would not have convicted appellant of robbery and of the special circumstance that the murder was committed during the commission or attempted commission of robbery.

(1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], that Proposition 8 did not fully abrogate a trial court's discretion to exclude evidence under Evidence Code section 352. Under *Castro,* Proposition 8 broadened the category of felony convictions relevant to impeachment, to include not only those which reflect directly on honesty and integrity but also those which involve "moral turpitude." (*Id.,* 38 Cal.3d at pp. 313-316.) Voluntary manslaughter is a crime involving moral turpitude. (*People* v. *Parrish* (1985) 170 Cal.App.3d 336, 349-350 [217 Cal.Rptr. 700].)

Appellant contends the prejudicial effect of admitting the prior conviction for impeachment outweighed its probative value on the issue of credibility, but the record does not support his argument. In this case, notwithstanding the trial court's ruling, appellant elected to testify. Thus, the jury was not deprived of evidence of appellant's defense.[6] Nothing in the record remotely suggests, as appellant contends, that the admission of the prior "virtually foreclosed [the ability of the jury to engage in a] relatively dispassionate analysis of the evidence . . . by injecting extraneous and inflammatory considerations into the jury deliberations." The prior was referred to by the prosecutor in the course of cross-examination only in passing and not at all during closing arguments. The jury was instructed that "[t]he fact that a witness has been convicted of a felony . . . may be considered by you only for the purpose of determining the credibility of that witness." That appellant's testimony was unconvincing was not the fault of the trial court's ruling but of the weakness of appellant's story. (*People* v. *Rollo* (1977) 20 Cal.3d 109, 120-121 [141 Cal.Rptr. 177, 569 P.2d 771].) Appellant's story was less consistent with the physical evidence than the prosecution version. Several witnesses saw appellant remove what they described as a wallet from the victim's body. Appellant's claim that they must have been referring to the knife sheath was contradicted by the fact that the knife sheath was still snapped closed and attached to the victim's belt when the crime was investigated. The contact wound and the trajectory of the bullet were more consistent with the description of appellant holding the gun to the victim's

---

[6]Appellant testified in his own defense, admitting the shooting but denying a robbery. Appellant testified he approached the victim and asked if the victim wanted to buy some "Sherms" (PCP cigarettes). The victim responded by calling appellant a name in Spanish and approaching appellant. Appellant hit the victim in the jaw with his fist. The victim hit appellant in the eye, staggering appellant. Appellant pulled out his gun, and although conceding on cross-examination that the gun had no safety and that his finger was on the trigger, he claimed he was merely trying to hit the victim on the head with the gun. The victim "threw his hands up, and the gun wrapped around his hand and it went off." Then "he fell, so I kneeled over him because I seen this black thing in the back of him that I thought might have been the gun. [¶] So I patted him down and it wasn't no gun, and it turned out to be a knife in a holster, so I ran."

When the authorities secured the scene, no wallet was found. The victim had $10.25 in his right front pants pocket. Attached to the victim's belt was a closed black leather knife sheath with a knife inside.

neck in a robbery than with appellant's claim of an accidental shooting during a struggle. His claim of intending to use the gun only as a club was unconvincing in light of his concession he had his finger on the trigger and the gun had no safety. Although $10.25 was found in the victim's right front pants pocket, appellant was seen turning the victim over and removing a wallet from the rear pants pocket. It is not reasonably probable that a result more favorable to appellant would have occurred had the trial court been aware of its discretion under *People* v. *Castro* or if the prior had been excluded for impeachment purposes. (*People* v. *Castro, supra*, 38 Cal.3d at pp. 318-319.)

The judgment is affirmed.

Feinerman, P. J., and Hastings, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 16, 1986.