[Crim. No. 20862. First Dist., Div. One. July 20, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
RITA ANN ALVARADO et al., Defendants and Appellants.

COUNSEL

Daniel F. McHugh, Douglas R. Schmidt and Quin Denvir, State Public Defender, under appointments by the Court of Appeal, and Joel Kirshenbaum, Deputy State Public Defender, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Robert R. Granucci and Blair W. Hoffman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BANCROFT, J.**\*—Rita Ann Alvarado, Kenneth Charles Cosper, and Irvin D. Grant appeal after each of them was convicted of multiple crimes during a single incident. All three appellants were convicted of two counts of attempted robbery (Pen. Code, §§ 664/211)[1] and one count of burglary (§ 459). Grant was also convicted of possession of a sawed-off shotgun (§ 12020). Alvarado was convicted of receiving stolen property (§ 496) and of possession of a concealable firearm by an ex-felon (§ 12021). She also pleaded guilty to voluntary manslaughter (§ 192, subd. 1) after a trial of a murder charge resulted in acquittals as to Cosper and Grant and a hung jury as to Alvarado.

We affirm the judgments. As to Cosper and Grant, we remand for resentencing.

---

\*Assigned by the Chairperson of the Judicial Council.

[1]Unless otherwise indicated, references in this opinion to section will refer to the Penal Code and references to rule will refer to the California Rules of Court.

## I. FACTS

This case arises from a dispute between narcotics users (appellants) and sellers (the victims). In the morning of May 6, 1979, the three appellants gained entry into the San Francisco residence of Julian Habecker, Mary Martinez, and Lorrain Woodard. Two other persons (Tims and Wakefield) were also on the premises.

Habecker was a heroin dealer and it may be inferred from the evidence that appellant Alvarado claimed to have bought from him a day or two earlier some inferior quality drugs. Appellants entered the house armed with guns, including the sawed-off shotgun. They bound Woodard, Tims, and Wakefield with tape, telling the three captives that their only dispute was with Habecker and Martinez. While Grant stood guard with the sawed-off shotgun over the three captives, Alvarado and Cosper proceeded into the bedroom Habecker and Martinez occupied. At gunpoint, they took several hundred dollars, some illicit heroin and amphetamine and other miscellaneous property.

As they were leaving the premises, appellants encountered one Rolley, who was just entering. Though no one saw the incident, from Alvarado's eventual guilty plea, it may be inferred that Alvarado shot Rolley, who died from the wounds. Appellants escaped by car to their residence in Redwood City and started packing their effects, presumably to flee. However, the police set up a stakeout of the residence before appellants left. Appellants were apprehended as they drove away and incriminating evidence—primarily the weapons and tape used and the items stolen in the San Francisco robbery—was seized.

This was primarily a murder case and one which featured recalcitrant prosecution witnesses.[2] The defense essentially relied on the absence of direct proof that appellants committed the homicide and on the untrustworthiness of the prosecution's eyewitnesses. However, there was evidence, albeit self-serving and ambiguous, that appellants were motivated by a desire to have retribution for Habecker's sale of bogus heroin. Appellants used this evidence as a basis for arguing the theory, applicable to the theft-related charges only, that they were not guilty, because they took only the property Alvarado had given Habecker for the bogus drugs.

[2]To illustrate, what was obviously a robbery ended up charged and proved as *attempted* robbery because neither Habecker nor Martinez would testify at the preliminary hearing.

We recite additional facts in the body of the opinion, as necessary to clarify the issues.

## II. Procedural History

The information charged nine counts, four against all three appellants, two against Grant solely, one against Alvarado and Grant, and one each as to Alvarado and Cosper, solely. It included numerous sentence-enhancing allegations under sections 12022, subdivision (a) (principal armed with a firearm [hereinafter armed allegation or finding, etc.]), 12022.5 (personal use of a firearm [hereinafter use allegation or finding, etc.]), and 12022.7 (infliction of great bodily injury). It also included sentence-enhancing allegations concerning prior prison terms under section 667.5—seven priors as to Cosper and two as to Alvarado.

Alvarado and Cosper admitted all the priors. By the time the case reached the jury, only those charges we described at the outset remained in the case. The section 12022.7 allegations were all dismissed but the jury found true all of the firearm allegations which were available.

Appellants were sentenced as follows: Alvarado bargained for and received an upper term of six years on count 1 (voluntary manslaughter), plus two years for the count 1 use enhancement, plus one-third of the midterms on counts 3 (attempted robbery), 4 (attempted robbery), and 7 (receiving stolen property), i.e., eight months each, a total of ten years. The count 2 (burglary) term, the count 6 (felon in possession of concealable firearm) term, and all other enhancements were stayed, the stays to become permanent upon service of the count 1 (principal) term.

Cosper received an upper term of three years on count 3, plus two years for the use enhancement, three years under section 667.5, subdivision (a) ["violent prior"], two years under section 667.5, subdivision (b) ["other prior"], plus one-third of the midterm (i.e., eight months) on count 4, a total of ten and two-thirds years. The count 2 term and all other enhancements were stayed, the stays to become permanent upon service of the count 3 (principal) term.

Grant received an upper term of three years on count 3, plus two years for the use enhancement, plus one-third of the midterm on counts

8 (possession of sawed-off shotgun) and 4 (i.e., eight months each), a total of six and one-third years. The count 2 term and all other enhancements were stayed, with the stays to become permanent upon service of the count 3 (principal) term.

## III. DISCUSSION

### 1. *Procedural Errors*

Appellants first raise four claims of procedural error before and during the trial.

### A. *Grant of Continuance/Denial of Severance*

■ On October 1, 1979, at the very end of the 60-day mandatory dismissal period pursuant to Penal Code section 1382, for failure to commence the trial immediately,[3] Alvarado and the People moved for a continuance because Alvarado's counsel had other cases to try. Cosper and Grant opposed the motion and moved to sever for timely trials as to them; the court denied the motions. Cosper and Grant subsequently moved to dismiss on this basis and that motion was denied. They now contest this series of events and ask for reversal.

The People must show "good cause" under section 1382, to avoid *mandatory* dismissal beyond the 60-day period. (*Sykes* v. *Superior Court* (1973) 9 Cal.3d 83, 88-89 [106 Cal.Rptr. 786, 507 P.2d 90]; *People* v. *Tahtinen* (1958) 50 Cal.2d 127, 131-132 [323 P.2d 442].) The determination of "good cause" is said to be a matter within the trial court's discretion (*People* v. *Szeto* (1981) 29 Cal.3d 20, 29 [171 Cal.Rptr. 652, 623 P.2d 213]) (but there are a number of discrete principles which the court must apply in deriving its conclusion and which limit that discretion). (Cf. *People* v. *Johnson* (1980) 26 Cal.3d 557, 570 [162 Cal.Rptr. 431, 606 P.2d 738].) Among these are some concerns that pointed to granting the severance motion in this case. (Cf. *People* v. *Graham* (1969) 71 Cal.2d 303, 330 [78 Cal.Rptr. 217, 455 P.2d 153].)

However, when the issue is raised on appeal, apart from showing error below, the appellant must show that he suffered actual prejudice.

---

[3]Section 1382 reads in relevant part: "The court, unless good cause to the contrary is shown, must order the action to be dismissed in the following cases: ... [¶] 2. When a defendant is not brought to trial in a superior court within 60 days after the finding of the indictment or filing of the information ...."

(*People* v. *Johnson, supra*, 26 Cal.3d 557, 574.) Appellants here identify the error but make no effort to show prejudice. Plainly, they suffered no prejudice. There was no problem of statute of limitations or of a bar to refiling the charges had the court dismissed them on October 1. In the interim between October 1 and October 22, the defense lost no evidence and the prosecution found none. The section 1382 error does not warrant reversal.

### B. *Peremptory Challenges*

■ Grant argues that the case must be reversed because the trial court erred by allowing the prosecutor an unfair advantage as to peremptory jury challenges. We first note that the court did technically err. In accordance with sections 1070 and 1070.5,[4] it granted each side 26 peremptory challenges, each defendant 5 personal peremptories, and the People 15 extra peremptories—a total of 41 per side. However, for reasons the court never adequately explained, it ruled that in the event both sides consecutively passed an opportunity to exercise a challenge before the 26 "joint" challenges were exhausted, the defense would be reduced to the 15 individual challenges but the prosecution would not be so reduced. We find no authority for this ruling. Appellants argued, accurately, that it created an unfair tactical dilemma for them. By passing before they used up all 26 joint challenges, they stood to lose the remainder of those challenges yet the People could pass without losing challenges. Whatever the defense did, the prosecution, if it wished, could have waited until the defense challenges were exhausted and, in some degree, hand picked a jury.

A review of the cases on point reveals that while the right to challenge jurors is an important right, subject to careful scrutiny on appeal (cf. Witkin, Cal. Criminal Procedure, § 423, pp. 421-422), reversal is not required in the absence of a showing of prejudice. (*People* v. *Crowe* (1973) 8 Cal.3d 815, 831-832 [106 Cal.Rptr. 369, 506 P.2d 193]; *Peo-*

---

[4]As pertinent to this case, these sections read as follows: "§ 1070. (a) If the offense charged be punishable with death, or with imprisonment in the state prison for life, the defendant is entitled to 26 and the state to 26 peremptory challenges."

"§ 1070.5. (a) Except as provided in subdivision (b), when two or more defendants are jointly tried for any public offense, whether felony or misdemeanor, the state and the defendants shall be entitled to the number of challenges prescribed by Section 1070, which challenges on the part of the defendants must be exercised jointly. Each defendant shall also be entitled to five additional challenges which may be exercised separately; the state shall also be entitled to additional challenges equal to the number of all the additional separate challenges allowed the defendants."

*ple* v. *King* (1970) 1 Cal.3d 791, 805 [83 Cal.Rptr. 401, 463 P.2d 753]; *People* v. *Wilkes* (1955) 44 Cal.2d 679, 686 [284 P.2d 481]; *People* v. *Bugg* (1947) 79 Cal.App.2d 174 [179 P.2d 346].)[5] No finding of actual prejudice could lie until at least such time as the defense found itself without challenges yet still dissatisfied with the venire.

Here, each appellant had five individual challenges left and the People had used only 15 of their challenges when all parties affirmatively expressed satisfaction with the jury and the jury was sworn. Since the court's ruling was never actually implemented, there was no prejudice.

## C. *Juror Misconduct*

■ Grant identifies an instance of alleged juror misconduct and argues for reversal on that basis. His argument is not persuasive.

At a recess early in the trial, an *alternate* juror spoke briefly to a witness (Tims) in the courthouse hallway. Tims had testified that when he was arrested some months earlier and placed in the same cell block with Grant, Grant told him "several times" not to show up at the trial. In the hallway, the alternate made a conversational reference in Tims' presence to the effect that she was going to Hawaii. Tims said he would also like to go there and the alternate (in her words) said, "[Y]eah, I'd lay low, you know . . . ."

Since the alternate was never seated and there is no showing of prejudice, the point is without merit.

## D. *Evidence of Priors*

■ Cosper contends that the findings as to all seven of his priors must be stricken because no sufficient foundation for the admission of the purported records of the priors was laid.

---

[5]Even those cases cited by appellants which hint at a per se reversal rule turn out to involve instead showings of *actual* prejudice. (*People* v. *Diaz* (1951) 105 Cal.App.2d 690, 695, 700 [234 P.2d 300] [*over objection*, court wrongfully cut off defendant's *last* peremptory challenge]; *People* v. *O'Connor* (1927) 81 Cal.App. 506, 519-520 [254 P.2d 630] [court allowed too few challenges and defendants *sought* to *exercise* the others to which they were entitled]; see also *People* v. *Williams* (1981) 29 Cal.3d 392, 412 [174 Cal.Rptr. 317, 628 P.2d 869] [in a case involving improper restriction of voir dire, court notes that "[I]n many contexts a procedure *depriving* defendant of the right to secure an impartial jury necessarily dictates reversal . . . ." (Italics added.)].)

But he complains only of proof offered at the preliminary hearing. Priors need not even be alleged until the information stage is reached. (§ 969a.) At trial the prosecutor was never required to prove the priors because Cosper *admitted* them. Arguably the admission was conditional, subject to Cosper's right to contest the proof of them upon sentencing. However, he never raised the issue at the sentencing proceedings.

Whether by way of his admissions (cf. *People* v. *Martin* (1973) 9 Cal.3d 687, 693-694 [108 Cal.Rptr. 809, 511 P.2d 1161]), or by way of his failure to contest the issue at the sentencing (see Evid. Code, § 353; Witkin, Cal. Criminal Procedure, *supra*, § 747, p. 721), or both, Cosper is now foreclosed from contesting the proof of his priors.

### 2. *Prosecutorial Misconduct*

■ Cosper and Grant contend that reversal is required because in cross-examining a defense witness (Norris), the prosecutor asked if Norris had known either Cosper or Grant "in prison." Similarly, Cosper asks for reversal because witness Martinez volunteered that Cosper, at the time of the robbery, had "just come out of San Quentin . . . ."

The latter contention is completely without merit. In context, the comment was unexpected, not solicited or elicited and therefore it does not evidence misconduct. Neither lawyers nor trial judges are ordinarily equipped to obliterate history from the memories of witnesses.

The former contention appropriately presents the question of misconduct, since it was the *questions* that were objectionable and appellant at least moved for a mistrial the next morning because of them.

Appellants cite numerous cases, some of which arguably support the proposition that any such questioning renders the trial unfair and requires reversal. (Cf. *People* v. *Ozuna* (1963) 213 Cal.App.2d 338, 340-342 [28 Cal.Rptr. 663]; *People* v. *Figuieredo* (1955) 130 Cal.App. 2d 498, 505-506 [279 P.2d 200].) But more recent and binding authority states that instances of misconduct are reviewed according to the harmless error test. (*People* v. *Bolton* (1979) 23 Cal.3d 208, 214 [152 Cal.Rptr. 141, 589 P.2d 396].)

We agree that the misconduct in this instance probably was deliberate. Prosecutors are generally able to avoid allusions to the priors of a

defendant who admitted those priors specifically to keep the jury from learning about them. We assume further that an admonition, if anything, might have exacerbated the problem. (Cf. *People v. Green* (1980) 27 Cal.3d 1, 27, 34 [164 Cal.Rptr. 1, 609 P.2d 468] [objection normally required to preserve issue but where admonition would not have cured the error, reviewing courts do not adhere to the timely objection requirement].)

Here, the error clearly was not prejudicial by either the normal standard (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]) or the beyond-a-reasonable-doubt constitutional standard (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]). Except as to the counts which resulted in dismissal or acquittal, the case against Cosper and Grant was overwhelming. Also, any conclusions about prejudice must be drawn in light of all the legitimate evidence which incidentally showed that appellants were unsavory people. In the context of this 20-day trial, these two consecutive questions could not have had meaningful prejudicial effect.

### 3. *Sufficiency of Evidence*

Appellants variously argue the sufficiency of the evidence on four of the counts.

### A. *Claim-of-Right Defense*

■ Alvarado argues that there was insufficient evidence to sustain the convictions on counts 2, 3, and 4 (respectively, burglary to commit larceny, attempted robbery of Habecker, attempted robbery of Martinez).

Her theory rests upon the observation that there was no proof that the property appellants took was not previously their own, which they recovered because Habecker cheated them. It is an established principle of the law of theft that a bona fide belief of a right or claim to the property taken, even if mistaken, negates the element of felonious intent. (*People v. Butler* (1967) 65 Cal.2d 569, 573 [55 Cal.Rptr. 511, 421 P.2d 703]; 1 Witkin, Cal. Crimes, §§ 385, 441, pp. 359, 407-408.)

With specific reference to this case, we can identify three rational inferences from the theft evidence. One is that appellants intended to and

did, *only* retrieve the property Alvarado had given for the drugs. Another is that appellants intended to, and did, merely rob Habecker for the general purpose of economic gain. However, by far the most reasonable inference is that appellants intended to, and did, rob Habecker to "settle the score," and were not especially concerned with obtaining the *exact* amount of money and *exact* property Alvarado had given; rather, they meant to obtain whatever money and property was conveniently available, in retribution for the fraudulent drug deal. We note, for example, that appellants took, inter alia, some heroin. Reason does not suggest that Alvarado had given Habecker heroin as some or all of the purchase price for other heroin.

The inference of intent to commit theft is reasonable and credible. Any rational trier of fact could surely have drawn it and concluded beyond a reasonable doubt that appellants intended to steal. (cf. *People* v. *Johnson, supra*, 26 Cal.3d 557, 578.) The other elements of the crime are essentially conceded and are well supported by the evidence. There was sufficient evidence to support the theft-related convictions.

## B. *Sole Victim*

■ Cosper and Alvarado argue that there was insufficient evidence to support the count-4 conviction, solely because the evidence did not sufficiently show a taking from the person or possession *of Martinez*, the alleged victim in count 4. But, even if there was no actual taking from Martinez, the claim lacks merit.

In a recent case, the Supreme Court faced the very issue and resolved it adversely to appellants' position. "When two or more persons are in joint possession of a single item of personal property, the person attempting to unlawfully take such property must deal with all such individuals. All must be placed in fear or forced to unwillingly give up possession.... [¶] [I]f force or fear is applied to two victims in joint possession of property, two convictions of robbery are proper." (*People* v. *Ramos* (1982) 30 Cal.3d 553, 589 [180 Cal.Rptr. 266, 639 P.2d 908].)

Of course, whether there was joint possession in this case was a fact question for the jury and the conclusion that here there was joint possession is fully supported by the evidence. The evidence showed that appellants entered the bedroom, bound both occupants, and grilled both

of them concerning the whereabouts of "the money and the drugs." In addition to money and drugs, appellants took jewelry, coins, and other effects from the room. Fortuitously, none of these things were on Martinez' person, in her clothing, or within containers that were specifically and solely Martinez' own.

Moreover, the charging count was for *attempted* robbery and proof of an actual taking from Martinez was unnecessary. All that was required was proof that appellants intended to rob Martinez and set about doing it. (Cf. 1 Witkin, Cal. Crimes, *supra*, § 93, p. 90.) Appellants' conduct, just described, was sufficient proof of their intent to rob either or both of the bedroom occupants, depending upon who held property appellants wanted to take. There was sufficient evidence of an attempt to rob Martinez.

### C. *Knowledge of Stolen Nature of Property*

■ Alvarado also argues that there was insufficient evidence of the knowledge element of receiving stolen property. (Cf. § 496 ["knowing the property to be so stolen ..."].) The property was the .22 caliber automatic pistol Alavarado wielded in this robbery, which was taken in an unrelated burglary. The knowledge element of receiving stolen property is normally proved not by direct evidence but by an inference from circumstantial evidence. (1 Witkin, Cal. Crimes, *supra*, § 427, pp. 395-396.)

Appellant relies on *People* v. *Kunkin* (1973) 9 Cal.3d 245 [107 Cal. Rptr. 184, 507 P.2d 1392, 57 A.L.R.3d 1199], the classic case of reversal for insufficient evidence of knowledge that the property was stolen. In *Kunkin*, a newspaper publisher obtained from an attorney general's mail clerk a copy of the state's roster of undercover narcotics officers. In a prosecution of the publisher, the court held that there was "scant" evidence that the roster was technically *stolen* and also, that the evidence revealed that the clerk (1) did not disclose that his employment was terminated and (2) told the defendant that he was furnishing the roster only to look at, that he "never intended to relinquish" it. (*Id.*, at pp. 251-254.) Under the circumstances, the court held, there was no reasonable basis on which to attribute to defendant the inference that the document was stolen, not just borrowed and compromised without authorization.

The instant case is much more routine. In routine circumstances, the knowledge element is inferred from the defendant's failure to explain

how he came to possess a stolen item or his offer of an unsatisfactory explanation or from suspicious circumstances attendant upon his possession of the item. (Cf. *People* v. *Perez* (1974) 40 Cal.App.3d 795, 799 [115 Cal.Rptr. 405]; *People* v. *Taylor* (1969) 2 Cal.App.3d 979, 983-984 [83 Cal.Rptr. 119]; *People* v. *Boinus* (1957) 153 Cal.App.2d 618, 621-622 [314 P.2d 787].) Here, Alvarado offered no explanation for her possession of the gun. Also, when police recovered the gun, they recovered with it other stolen property. This is a suspicious circumstance further justifying the inference of knowledge. (*People* v. *Taylor, supra.*) The evidence on this count, although not strong, was sufficient.

### 4. *Instructions*

### A. *"Claim-of-Right" Instruction*

As noted above, three counts in this case required proof of intent to commit larceny: Counts 3 and 4 (attempted robbery) and count 2 (burglary by way of entry "with intent to commit larceny"). As to the intent element of theft, at least two appellants proposed instructions on the *People* v. *Butler* (*supra*, 65 Cal.2d 569) exception, to the effect that a defendant's bona fide belief of a claim or right to the property he intends to take, negates the intent element of the offense. The court refused to give either instruction or any instruction to the same effect.

 Appellants argue and the People concede that this was reversible error.[6] The proposed instructions essentially stated the law correctly. (Cf. *People* v. *Butler, supra*, 65 Cal.2d 569, 573.) Dubious as the factual support for the claim of right theory was, nevertheless, there was some evidence in support of it. If the trial court had been required to give the instruction *solely* by applying the test whether there is "any evidence deserving of any consideration whatever" (cf.

---

[6]Automatic reversal would be required here rather than an application of either the *Watson* or *Chapman* harmless error rule. (*People* v. *Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Stewart* (1976) 16 Cal.3d 133 [127 Cal.Rptr. 117, 544 P.2d 1317].) "'... [A] defendant has a constitutional right to have the jury determine every material issue presented by the evidence, ...' (*People* v. *Sedeno, supra*, 10 Cal.3d at p. 720.) An erroneous failure to instruct on an affirmative defense relied upon by the defendant constitutes a denial of this right which 'is in itself a miscarriage of justice ....' (*People* v. *St. Martin, supra*, 1 Cal.3d 524, 532; and see *People* v. *Oehler* (1970) 7 Cal.App.3d 685, 688-689 ... '... [S]uch error cannot be cured by weighing the evidence and finding it not reasonably probable that a correctly instructed jury would ...' not have convicted the defendant. (*People* v. *Sedeno, supra*, at p. 720.)" (*People* v. *Stewart, supra*, at p. 141; cf. *People* v. *Watson, supra*, 46 Cal.2d 818; *Chapman* v. *California, supra*, 386 U.S. 18.)

*People* v. *Flannel* (1979) 25 Cal.3d 668, 684 [160 Cal.Rptr. 84, 603 P.2d 1]; see also *People v. Stewart, supra,* 16 Cal.3d 133, 141; *People v. Carmen* (1951) 36 Cal.2d 768, 773 [228 P.2d 281]; *People v. Burns* (1948) 88 Cal.App.2d 867, 871 [200 P.2d 134]), we might feel constrained to term the refusal to instruct reversible error. But, as Justice Tobriner stated in an immediately succeeding paragraph in the *Flannel* case, after warning trial courts not to measure the substantiality of evidence by undertaking the exclusive jury task of weighing the credibility of witnesses, "If the evidence should prove minimal and insubstantial, however, the court need not instruct on its effect. [Citations.]" (*People v. Flannel, supra,* 25 Cal.3d at pp. 684-685.)

Footnote 12 in *Flannel* appears at the end of the foregoing quotation and significantly adds, "Many cases cite, often without elaboration, language in *Carmen, supra,* 36 Cal.2d 768, or in *People v. Modesto* (1963) 59 Cal.2d 722, 729 . . ., to the effect that jury instructions must be given whenever *any* evidence is presented, no matter how weak. To the extent that a decision of any court interprets these cases to require instructions without evidence substantial enough to merit consideration, it is disapproved. (See, e.g., *People v. Thornton* (1974) 11 Cal.3d 738, 769, fn. 20 . . .; *People v. Sedeno, supra,* 10 Cal.3d 703, 716-717; *People v. Cantrell* (1973) 8 Cal.3d 672, 685 . . . .)" (*People v. Flannel, supra,* 25 Cal.3d 668, 685.)

By way of clarification, Justice Tobriner cautioned that while doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused and the court should instruct on every theory of the case, the court should do so "*'only to the extent each is supported by substantial evidence.'*" (*People v. Flannel, supra,* 25 Cal.3d 668, 685.) (Italics added.)

In applying the above rules to the evidence in the instant case, we conclude that the defendants presented no substantial evidence to support their claim-of-right theory and that the trial court's refusal to give the instruction was proper.

We reach this conclusion after paying appropriate deference to the concession by the People through the Attorney General's representations that reversible error occurred. We believe we are not bound by the concession.

The only evidence on the point was a completely ambiguous statement by Alvarado's mother to the effect that her daughter had once

said that appellants had intended to recover some property Habecker had stolen from them. Yet, the evidence disclosed that the appellants conducted a general ransacking of the bedroom indiscriminately taking items of value never specifically related to any claim of right. On the whole, and at best for appellants, the evidence to support a *Butler* instruction was "minimal and insubstantial." (*People v. Flannel, supra,* 25 Cal.3d 668, 684-685, fn. 12 and accompanying text.) ▮ ▮ ▮ The court did not err in refusing the instruction.[7]

## B. *Limiting Instruction*

▮ Grant and Cosper argue that the court should have instructed that evidence of Alvarado's bank transactions could be considered against Alvarado only. However, we note that there was absolutely no error in this respect. The basis in relevance of the bank records was that the evidence tended to prove intent, per motive: Alvarado withdrew money almost daily, arguably to support her drug habit and the money was almost gone. Yet, it cannot be contended that either Grant or Cosper, who were both armed and active in the robbery, were not liable as aiders and abettors.[8] It is thus not necessary that they shared Alvarado's intent (*People v. Vernon* (1979) 89 Cal.App.3d 853, 869 [152

---

[7]Another view might well be that perhaps counts 3 and 4 could be modified to assault with a deadly weapon so long as the punishment does not exceed that provided for attempted robbery. Such a modification would seem to be appropriate *if* the third and fourth counts charged "robbery" but instead they charged *attempted robbery*. Assault with a deadly weapon is a necessarily included offense in a case of robbery with a gun use allegation; but not in a case of *attempted* robbery with a gun use allegation, as here, since an attempted robbery may never reach the stage of an assault in a particular case. (*People v. McGreen* (1980) 107 Cal.App.3d 504, 509-513 [166 Cal.Rptr. 360]; cf. *People v. Flores* (1981) 115 Cal.App.3d 67, 76 [171 Cal.Rptr. 365]; *People v. Guerin* (1972) 22 Cal.App.3d 775 [99 Cal.Rptr. 573], cert. den. 409 U.S. 859 [34 L.Ed.2d 105, 93 S.Ct. 145]; also see *People v. Schueren* (1973) 10 Cal.3d 553, 557-562 [111 Cal.Rptr. 129, 516 P.2d 833] which deals with the § 6, art. I proscription against cruel or unusual punishment when a court under § 1260 exercises its power to "modify a judgment or .. reduce ... the punishment imposed ...")

Also see to the same effect analyses under article I, section 15 of the California Constitution prohibiting the imposition, upon retrial after reversal, of a sentence greater than the one imposed originally even if a greater sentence would be fully within the statute under which the defendant is convicted. (*People v. Collins* (1978) 21 Cal.3d 208, 216-217 [145 Cal.Rptr. 686, 577 P.2d 1026]; *People v. Hood* (1969) 1 Cal.3d 444, 459 [82 Cal.Rptr. 618 462 P.2d 370]; *People v. Ali* (1967) 66 Cal.2d 277, 281-282 [57 Cal.Rptr. 348, 424 P.2d 932]; *People v. Henderson* (1963) 60 Cal.2d 482, 495-497 [35 Cal.Rptr. 77, 386 P.2d 677].)

[8]CALJIC No. 3.01 (1980 rev.) provides: "A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator ... he aids ...

Cal.Rptr. 765]); at most, it is necessary only to prove intent *to aid* (cf. *People* v. *Yarber, supra,* 90 Cal.App.3d 895, 912-917; *People* v. *Petty* (1981) 127 Cal.App.3d 255, 262-263 [179 Cal.Rptr. 413]), which was proved so overwhelmingly as to be a certainty in this case. Whether the jury considered the bank transactions as evidence of Grant's or Cosper's motive is immaterial. In any event, any such error was harmless under either the *Watson* or *Chapman* test. (*People* v. *Watson, supra,* 46 Cal.2d 818, 836; *Chapman* v. *California, supra,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711].)

## C. *CALJIC No. 2.27*

Grant argues that the court should have given the *People* v. *Rincon-Pineda* ((1975) 14 Cal.3d 864 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845]) instruction, CALJIC No. 2.27.[9] The reasoning is that the attempted robbery convictions (counts 3 and 4) rested solely on the testimony of Mary Martinez because she was the only witness who testified to (1) a taking, (2) of identified property, (3) from the person or presence of the victims.

Grant fails to make the distinction between *robbery* (requiring proof of the elements stated above) and *attempted robbery* (which was the charge in this case). As stated *supra,* all the People needed to prove on counts 3 and 4 was (1) intent to rob and (2) an act taken towards commission of the crime. Evidence on both elements of attempt came not only from Martinez but also from the three captives Woodard, Wakefield, and Tims.

## 5. *Multiple Prosecution*

Cosper and Grant make the identical argument that a series of cases holds that there cannot be more than one robbery conviction where property is taken at the same time from the same place but two or more persons are present as victims. (*People* v. *Childs* (1980) 112

---

the commission of such crime. ...." When intent is ambiguous the *Yarber* case commands that the word "intentionally" be inserted between "he" and "aids." (*People v. Yarber* (1979) 90 Cal.App.3d 895 [153 Cal.Rptr. 875].) Here there was no "ambiguity" of intent.

[9]"Testimony which you believe given by one witness is sufficient for the proof of any fact. However, before finding any fact [required to be established by the prosecution] to be proved solely by the testimony of such a single witness, you should carefully review all the testimony upon which the proof of such fact depends."

Cal.App.3d 374, 383 [169 Cal.Rptr. 183]; *People* v. *Higgins* (1972) 28 Cal.App.3d 771, 775 [104 Cal.Rptr. 925]; *People* v. *Guerin* (1972) 22 Cal.App.3d 775, 782 [99 Cal.Rptr. 573].) However, *People* v. *Ramos, supra,* 30 Cal.3d 553, 587-589, holds directly to the contrary and in fact expressly disapproves all three of appellants' cases on point. (*Id.,* at p. 589, fn. 16.)

## 6. *Sentencing Errors*

Among them appellants raise numerous specifications of alleged error in the sentencing.

### A. *Alvarado*

Alvarado raises several arguments about dual uses of the same facts to support more than one sentence enhancement and more than one upper term. These contentions lack substantive merit because in each cited instance, only a single punishment was actually imposed. (Cf. *People* v. *Wischemann* (1979) 94 Cal.App.3d 162, 175-176 [156 Cal.Rptr. 386]; see also *People* v. *Miller* (1977) 18 Cal.3d 873, 886 [135 Cal.Rptr. 654, 558 P.2d 552]; *In re Culbreth* (1976) 17 Cal.3d 330, 333-334 [130 Cal.Rptr. 719, 551 P.2d 23].) ■ Moreover, the record reveals that the sentence imposed upon Alvarado, and each of its components, was based on her express acceptance of it as part of an overall plea bargain. Since the sentence was otherwise lawful, she is held to her bargain. (*In re Troglin* (1975) 51 Cal.App.3d 434, 438-439 [124 Cal.Rptr. 234]; *People* v. *Jones* (1981) 124 Cal.App.3d 749, 754-755 [177 Cal.Rptr. 605]; cf. *People* v. *Harvey* (1980) 112 Cal.App.3d 132, 139 [169 Cal. Rptr. 153].) This procedure is, of course, compatible with the cruel or unusual punishment and double jeopardy principles referred to *supra,* in footnote 7.

### B. *Cosper (One)*

Cosper's primary sentencing argument is that neither the prior which furnished the basis for the three-year enhancement nor the instant crime itself could serve as a basis for the three-year enhancement under section 667.5,[10] as interpreted by case law. The prior was a 1965 rob-

---

[10]As relevant to this opinion, section 667.5 reads: "Enhancement of prison terms for new offenses because of prior prison terms shall be imposed as follows: [¶] (a) Where

bery which predated any statutes by which firearm use might have been "charged and proved."

As for his point concerning the present offense, even though it seems ludicrous in light of the plain language in subdivision (c)(8) of section 667.5, it has the support of case law. (*People v. Davis* (1980) 103 Cal.App.3d 270, 276-277 [163 Cal.Rptr. 22].) We disagree with *Davis*. The 1980 amendment to section 1170.1 (Stats. 1980, ch. 132, § 2, No. 2 Deering's Adv. Legis. Service, p. 200) and the implications of *People v. Hernandez* (1981) 30 Cal.3d 462, 466-467 [179 Cal.Rptr. 239, 637 P.2d 706], would, in any event, seem to render it a dead letter. However, because we are remanding the case, we need not make a determinative decision on the issue.

As regards the prior felony, it appears that the trial court limited its inquiry to whether the *facts* of the prior offense included use of a firearm. This is not the test. The question is whether use of a firearm was "charged and proved" in that instance. On remand, the trial court is directed to address itself to that question and pronounce sentence according to its factual conclusion.[11]

■ The People argue that in fact this court should add a further year's enhancement to Cosper's sentence. The rationale is that the trial

one of the new offenses is one of the violent felonies specified in subdivision (c), in addition and consecutive to any other prison terms therefor, the court shall impose a three-year term for each prior separate prison term served by the defendant where the prior was one of the violent felonies specified in subdivision (c); provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of 10 years in which defendant remained free of both prison custody and the commission of an offense which results in a felony conviction. ... [¶] (c) For the purposes of this section, 'violent felony' shall mean any of the following: [¶] (1) Murder or voluntary manslaughter. [¶] (2) Mayhem. [¶] (3) Rape as defined in subdivision (2) of Section 261. [¶] (4) Sodomy by force, violence, duress, menace, or threat of great bodily harm. [¶] (5) Oral copulation by force, violence, duress, menace, or threat of great bodily harm. [¶] (6) Lewd acts on a child under 14 as defined in Section 288. [¶] (7) Any felony punishable by death or imprisonment in the state prison for life. [¶] (8) Any other felony in which the defendant inflicts great bodily injury on any person other than an accomplice which has been charged and proved as provided for in Section 12022.7 on or after July 1, 1977, or as specified prior to July 1, 1977, in Sections 213, 264, and 461, or any felony in which the defendant uses a firearm which use has been charged and proved as provided in Section 12022.5. [¶] The Legislature finds and declares that these specified crimes merit special consideration when imposing a sentence to display society's condemnation for such extraordinary crimes of violence against the person."

[11]The People argue that Cosper's admission of the prior waived this issue but we disagree. By our reading of the record, at the time he accepted the admission, the trial judge bound himself to "satisf[y] myself ... [that] there are valid priors before I sentence ...." No further objections or arguments were required to preserve the issue for appeal.

court expressly declined to do so improperly, on the authority of a now-overruled case. (*People* v. *Cole* (1979) 94 Cal.App.3d 854, 865-866 [155 Cal.Rptr. 892] [holding that where on felony one the defendant's parole was revoked and he was reimprisoned concurrently with sentence on felony two, only one "prior term" resulted from the two cases].)

However, respondent cites as authority for now lengthening the sentence the holding of *People* v. *Serrato* (1973) 9 Cal.3d 753, 763-764 [109 Cal.Rptr. 65, 512 P.2d 289]. To the contrary, *Serrato* allows such an alteration only where the original sentence was unlawful or unauthorized; where the sentence was "a lawful one, within the limits of the discretion conferred by statute" (*id.*, at p. 764), the double jeopardy principle forbids increasing the sentence. Since *People* v. *Cole, supra,* 94 Cal.App.3d 854, was good law when the instant sentence was imposed, the sentence was lawful and within discretionary limits. It cannot now be increased, despite the subsequent debunking of *Cole*.

### C. *Cosper (Two)/Grant (One)*

Cosper and Grant both argue that the court failed to state reasons for its sentence choice of imprisonment. (Cf. § 1170, subd. (c); rules 405(f), 439(d); *People* v. *Arceo* (1979) 95 Cal.App.3d 117, 120-122 [157 Cal.Rptr. 10].) We need not decide this issue because if the court correctly stated the circumstances in aggravation (*infra*), it satisfied its duty in this respect; if it incorrectly stated the circumstances in aggravation, the case must be remanded for resentencing in any event.

### D. *Cosper (Three)/Grant (Two)*

 Cosper and Grant proceed to argue that the court erred in imposing the aggravated terms. In each instance, the court cited two aggravating factors, i.e., great violence/threat of great bodily harm (rule 421(a)(1))[12] and "planning/professionalism" (rule 421(a)(8)). The briefs focus solely on the former specification; by their silence, appellants seemingly concede that the latter one was fully justified and appropriate.

---

[12]The rules and applicable to this and ensuing discussions are rules 421, 425, and 441: "Rule 421. Circumstances in aggravation include: [¶] (a) Facts relating to the crime, including the fact that: [¶] (1) The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness, whether or not charged or chargeable as an enhancement under section 12022.7. [¶] (2) The defendant was armed with or used a weapon at the

The first question, therefore, is whether the concededly valid second factor will support the aggravated terms, notwithstanding the first factor. The courts are divided on the point, some subjecting the issue to standard harmless error analysis (*People* v. *Flores, supra,* 115 Cal. App.3d 67, 80; *People* v. *Jones* (1981) 126 Cal.App.3d 308, 318 [178 Cal.Rptr. 818]), others inclining towards a remand for resentencing no matter how trivial the error or how many valid aggravating factors remain (*People* v. *Jardine* (1981) 116 Cal.App.3d 907, 924 [172 Cal. Rptr. 408]; *People* v. *Garfield* (1979) 92 Cal.App.3d 475, 479 [154

---

time of the commission of the crime, whether or not charged or chargeable as an enhancement under section 12022 or 12022.5. [¶] (3) The victim was particularly vulnerable. [¶] (4) The crime involved multiple victims. [¶] (5) The defendant induced others to participate in the commission of the crime or occupied a position of leadership or dominance of other participants in its commission. [¶] (6) The defendant threatened witnesses, unlawfully prevented or dissuaded witnesses from testifying, suborned perjury, or in any other way illegally interfered with the judicial process. [¶] (7) The defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed. [¶] (8) The planning, sophistication or professionalism with which the crime was carried out, or other facts, indicate premeditation. [¶] (9) The defendant used or involved minors in the commission of the crime. [¶] (10) The crime involved an attempted or actual taking or damage of great monetary value, whether or not charged or chargeable as an enhancement under section 12022.6. [¶] (11) The crime involved a large quantity of contraband. [¶] (12) The defendant took advantage of a position of trust or confidence to commit the offense. [¶] (b) Facts relating to the defendant, including the fact that: [¶] (1) He has engaged in a pattern of violent conduct which indicates a serious danger to society. [¶] (2) The defendant's prior convictions as an adult or adjudications of commission of crimes as a juvenile are numerous or of increasing seriousness. [¶] (3) The defendant has served prior prison terms whether or not charged or chargeable as an enhancement under section 667.5. [¶] (4) The defendant was on probation or parole when he committed the crime. [¶] (5) The defendant's prior performance on probation or parole was unsatisfactory."

"Rule 425. Criteria affecting the decision to impose consecutive rather than concurrent sentences include: [¶] (a) Facts relating to the crimes, including whether or not: [¶] (1) The crimes and their objectives were predominantly independent of each other. [¶] (2) The crimes involved separate acts of violence or threats of violence. [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior. [¶] (4) Any of the crimes involved multiple victims. [¶] (5) The convictions for which sentences are to be imposed are numerous. [¶] (b) Any circumstances in aggravation or mitigation."

"Rule 441. (a) A fact considered and used by the sentencing judge in deciding to deny probation, or in determining that the defendant is ineligible for probation, may be used to impose the upper term or for enhancement. [¶] (b) A fact charged and found as an enhancement may be used to impose the upper term, whereupon the additional term of imprisonment prescribed for that fact as an enhancement shall be stricken. The use of the fact to impose the upper term is an adequate reason for striking the additional term of imprisonment. [¶] (c) A fact used to enhance the defendant's prison sentence may not be used to impose the upper term. [¶] (d) A fact which is an element of the crime may not be used to impose the upper term."

Cal.Rptr. 869]; *People* v. *Roberson* (1978) 81 Cal.App.3d 890, 893 [146 Cal.Rptr. 777]).

Here, with only one unquestioned aggravating factor, in view of appellants' concession, we believe that even under a harmless error analysis, there would be some reasonable probability that a result more favorable to appellants would be reached on remand. (Cf. *People* v. *Flores, supra*, 115 Cal.App.3d 67.)

The remaining question is whether the great violence/threat of great bodily harm factor *was* inappropriate. The only conclusion the evidence permits is that it was only the presence of the firearms that justified a fact finding that there was threat of great bodily harm. Given this circumstance, we find that both the rule and the applicable code section (rule 441(c); see also § 1170, subd. (b)) as well as the case authority (*People* v. *Roberson, supra*, 81 Cal.App.3d 890, at p. 893; *People* v. *Lawson* (1980) 107 Cal.App.3d 748, 756-758 [165 Cal.Rptr. 764]) support appellants' position. The case must be remanded for resentencing as to Cosper and Grant.

### E. *Cosper (Four)/Grant (Three)*

In their final joint argument, Cosper and Grant contend that the court's two reasons for imposing consecutive sentences (multiple victims, rule 425(a)(4) and separate acts of violence, *id.*, (a)(2)) were without support in the record. The record shows that the court essentially found "multiple victims" upon the fact that there were multiple *crimes*, each involving one victim and likewise, found separate acts of violence upon the fact of separate *crimes*, each involving an act of violence. Because we must remand for independent reasons, we need not discuss this contention in detail. For the guidance of the trial court, we note that while the cases on point are unclear (cf. *People* v. *Burney* (1981) 115 Cal.App.3d 497, 505 [171 Cal.Rptr. 329]; *People* v. *Bejarano* (1981) 114 Cal.App.3d 693, 705 [173 Cal.Rptr. 71]; *People* v. *Lawson, supra*, 107 Cal.App.3d 748, at p. 758; *People* v. *Guevara* (1979) 88 Cal.App.3d 86, 93 [151 Cal.Rptr. 511]), the court's rationale in this instance seems to conflict directly with the language of the rule which the court is purportedly using, rule 425(a)(2) and (a)(4) (see fn. 12, *supra*). Subdivision (a)(2) looks for separate acts, while the instant facts reveal more or less a single violent action; subdivision (a)(4) plainly looks to whether any single crime or count by itself involved multiple victims, while the instant facts plainly show only one victim as to each of the two crimes.

F. *Grant (Four)*

 Finally, Grant argues that the imposition of sentences for both counts 3 (attempted robbery) and 8 (possession of sawed-off shotgun) violated section 654.[13] There is no merit to his claim. Grant conveniently overlooks the fact that the evidence showed him still in possession of the weapon several hours after the crimes. The appellants packed the weapon in a trailer with their other effects as they attempted to flee from their residence. This act of possession was indisputably an act separate in time from the other crimes and thus justified separate convictions and separate punishments.

## IV. DISPOSITION

The judgments of conviction are affirmed.

Because of our resolution of the sentencing issues, the causes of Cosper and Grant are remanded for resentencing proceedings consistent with the views expressed in this opinion. In so remanding, with two exceptions, we expressly leave it to the trial court to decide, as a matter within its own discretion, the propriety of imposing upper terms, consecutive sentences, and actual enhancements of punishment. The two exceptions are, as we have stated, that (1) Cosper cannot be given a three-year sentence enhancement except upon proof of a prior term arising out of an offense in which it was "charged and proved" that he used a firearm; and (2) the total terms imposed upon Cosper and Grant cannot exceed, respectively, ten and two-third years and six and one-third years.

Racanelli, P. J., and Elkington, J., concurred.

Petition's for a rehearing were denied August 18 and August 19, 1982, and appellants' petitions for a hearing by the Supreme Court were denied September 15, 1982. Bird, C. J., was of the opinion that the petitions should be granted.

---

[13]The section provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."