Filed 6/29/26  P. v. Ontiveros CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GASPER BALTAZAR ONTIVEROS,<br><br>    Defendant and Appellant. | 2d Crim. No. B347992<br>(Super. Ct. No. NA069732)<br>(Los Angeles County) |

Gasper Baltazar Ontiveros appeals from the superior court's order denying his petition for recall and resentencing under Penal Code[1] section 1170, subdivision (d)(1) (hereafter, 1170(d)(1)).  He contends the court erred in denying his petition because his sentence of 50 years to life is the functional equivalent of life without the possibility of parole (LWOP).  We affirm.

---

[1] All statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL HISTORY

A jury convicted Ontiveros in 2007 of first degree murder (§§ 187, subd. (a), 189, subd. (a)) and found true an enhancement that he personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)). Ontiveros was 17 years old when he committed the murder. The trial court sentenced him to a prison term of 50 years to life. We affirmed the judgment. (*People v. Gayton et al.* (Oct. 27, 2008, B199709) [nonpub. opn.] 2008 WL 4696613.)

In 2023 Ontiveros filed a petition for recall and resentencing under section 1170(d)(1), which applies to defendants who were under 18 years old when they committed their crimes and were sentenced to LWOP. (See *People v. Heard* (2022) 83 Cal.App.5th 608.) The district attorney opposed the petition on the grounds that Ontiveros was not sentenced to LWOP or its "functional equivalent," and resentencing was not available in light of the provisions of section 3051 regarding youth offender parole hearings. The trial court ruled he was not eligible for resentencing, exercised its discretion to not resentence, and denied the petition.

DISCUSSION

There is currently a split of authority whether a sentence of 50 years to life is the "functional equivalent" of LWOP that would make a defendant eligible for resentencing under section 1170(d)(1). *People v. Cabrera* (2025) 111 Cal.App.5th 650 holds that it is. The Attorney General here concedes that Ontiveros is entitled to remand for a resentencing hearing.

We are not bound by the Attorney General's concession and decline to accept it. (*People v. Thompson* (2025) 112 Cal.App.5th 1058, 1063, review granted Sep. 24, 2025, S292540 (*Thompson*);

*People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1021.) We agree with cases including *Thompson* and *People v. Munoz* (2025) 110 Cal.App.5th 499, 502, review granted June 25, 2025, S290828 that 50 years to life is not the "functional equivalent" of LWOP for purposes of section 1170(d)(1).

As we concluded in *People v. Lara* (2025) 115 Cal.App.5th 484, 487–488, review granted Dec. 30, 2025, S294095, the equal protection concerns that would authorize relief pursuant to section 1170(d)(1) to those not actually sentenced to LWOP have been mooted by the enactment of section 3051. It provides youth parole hearings to persons sentenced to 25 years to life for crimes committed before age 25, or sentenced to LWOP for crimes committed before age 18. (§ 3051, subd. (b)(3) & (4).) Thus, the availability of youth offender parole makes it unnecessary to expand section 1170(d)(1) beyond its plain meaning in order to comport with the Constitution. (See *People v. Ortega* (2025) 111 Cal.App.5th 1252, 1262–1265, review granted Sept. 17, 2025, S292070.)

We respectfully disagree with and decline to follow the opinions that would support a section 1170(d)(1) petition in this case. (E.g., *People v. Bagsby* (2024) 106 Cal.App.5th 1040, 1061–1063 [107 years to life]; *People v. Sorto* (2024) 104 Cal.App.5th 435 [140 years to life].) Only our Supreme Court can resolve this split of authority.

Ontiveros also contends that denying him a resentencing hearing, but affording one to offenders originally sentenced to LWOP under section 1170(d)(1) violates equal protection because both classes of offenders are parole-eligible but treated disparately. But as our colleagues in Division Three in *Thompson* recently explained, there are rational reasons why the

Legislature could have restricted resentencing hearings under section 1170, subdivision (d) to offenders originally sentenced to LWOP. (*Thompson*, *supra*, 112 Cal.App.5th at p. 1079.) Those reasons could include that juvenile offenders sentenced to 50 years to life accrue conduct credits while LWOP offenders do not, and to provide LWOP offenders with an opportunity to participate in counseling, education, and rehabilitation programs. (*Id*. at p. 1080.)

Because "we presume that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable,' " we conclude resentencing is not warranted here. (*People v. Hardin* (2024) 15 Cal.5th 834, 852.) As our Supreme Court recently stated: " 'If a plausible basis exists for the disparity, courts may not second-guess its " 'wisdom, fairness, or logic.' " ' [Citation.] '[T]he logic behind a potential justification need [not] be persuasive or sensible—rather than simply rational.' " (*Ibid*.)

DISPOSITION

The judgment (order denying resentencing) is affirmed.

NOT TO BE PUBLISHED.


BALTODANO, J.

We concur:


YEGAN, Acting P. J.                CODY, J.


4

BALTODANO, J., Concurring:

Because he was 17 years old when he committed murder, Ontiveros will receive a youth offender parole hearing during his 25th year of incarceration.  (Pen. Code,[1] § 3051, subd. (b)(3).)  Ontiveros thus does not come within the plain language of section 1170, subdivision (d)(1)(A) because he was not sentenced to life without the possibility of parole (LWOP).  (*People v. Heard* (2022) 83 Cal.App.5th 608, 633–634 (*Heard*).)  Nor in my view is Ontiveros's sentence the functional equivalent of LWOP.

I write separately because denying Ontiveros a resentencing hearing may violate his right to the equal protection of the laws guaranteed by our federal and state Constitutions.  (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).)

Like Ontiveros, offenders under the age of 18 but convicted of special circumstance murders and originally sentenced to LWOP are now entitled to youth offender parole hearings during their 25th year of incarceration.  (§ 3051, subd. (b)(4).)  Thus, both classes of defendants are arguably similarly situated because both are parole eligible.  (§ 3051, subd. (b)(3) & (4).)  " 'Where a class of criminal defendants is similarly situated to another class of defendants who are sentenced differently, courts look to determine whether there is a rational basis for the difference.' "  (*Heard, supra*, 83 Cal.App.5th at p. 631.)

Our Supreme Court in *People v. Hardin* (2024) 15 Cal.5th 834, 838–839 (*Hardin*) upheld the constitutionality of youth offender parole for offenders between the ages of 18 and 25 convicted of murder and sentenced to life with the possibility of parole, but not for offenders of that age convicted of special

---

[1] All statutory references are to the Penal Code.

circumstance murder and sentenced to LWOP.  In treating these youthful offenders disparately, *Hardin* concluded there was a rational basis because "the Legislature balanced multiple considerations, including both concerns about increasing opportunities for release for young adults able to show growth and maturity and concerns about calibrating the level of punishment appropriate for certain serious criminal offenses." (*Id*. at p. 857.)

But despite being similarly situated, Ontiveros and parole-eligible LWOP defendants are treated unequally in significant ways.  A youth offender parole hearing does not occur until the 25th year of incarceration.  But resentencing under section 1170, subdivision (d)(1)(A) is available earlier, after 15 years of incarceration.

The criteria for resentencing and youth parole are different.  Section 1170 provides that resentencing is *required* if the court finds "[t]he defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law," "[t]he defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall," "[t]he defendant committed the offense with at least one adult codefendant," or "[t]he defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation . . . ."  (§ 1170, subd. (d)(2)(A)–(D) & (d)(5).)

In contrast, youth offender parole focuses on "(1) the diminished culpability of youth as compared to adults; (2) the hallmark features of youth; and (3) any subsequent growth and increased maturity of the inmate."  (Cal. Code Regs., tit. 15,

2

§ 2445, subd. (b), see *id.*, § 2446.)  Parole may be denied if "the youth offender remains a current, unreasonable risk to public safety."  (Cal. Code Regs., tit. 15, § 2445, subd. (d).)  Thus, the possibility the parole board might grant release may not moot the alternative relief available through resentencing.

Resentencing also provides "meaningful relief" beyond a parole hearing because it permits the court to modify the sentence such as striking a firearm enhancement (see § 12022.53, subd. (h)) and entitles the defendant to "the benefits of retroactive ameliorative changes to the law."  (*People v. Sorto* (2024) 104 Cal.App.5th 435, 449.)  A parole hearing does not.

Nor does youth offender parole necessarily provide the same opportunity for release as resentencing.  A grant of parole is subject to the discretion of the Board of Parole Hearings.  (*In re Poole* (2018) 24 Cal.App.5th 965, 971; see *People v. Franklin* (2016) 63 Cal.4th 261, 269.)  In 2022, parole was granted in only 37 percent of lifer youth offender parole hearings.  (Board of Parole Hearings, Just the Facts—Grant Rates, p. 2 <https://www.cdcr.ca.gov/bph/wp-content/uploads/sites/161/2023/10/Just-the-Facts-Grant-Rates.pdf> [as of June 22, 2026], archived at <https://perma.cc/JY6D-PVPC>.)

It was not until 2012 that LWOP offenders under the age of 18 would be given an opportunity for resentencing through what is now codified as section 1170, subdivision (d)(1)(A).  (Sen. Bill No. 9 (2011–2012 Reg. Sess.).)  Its legislative history is discussed in *People v. Thompson* (2025) 112 Cal.App.5th 1058, 1075–1077, review granted Sep. 24, 2025, S292540.  In enacting section 1170, subdivision (d), the Legislature was "expressly concerned about juveniles being sentenced to die in prison."  (*Id.* at p. 1075, italics

omitted.) *Thompson* cited legislative reports that "sentencing minors to die in prison is barbaric, counter to principles of cognitive and emotional development in minors, and all but unprecedented in [the] rest of the world." (*Ibid*.) The author of the bill also cited racial disparities in imposing LWOP for juveniles. (*Id*. at p. 1076.) "This history suggests the Legislature's concern was not merely excessive punishment of juveniles that failed to take into consideration their capacity for change, or even lengthy sentences. Instead, a specific goal was to provide an opportunity for juvenile offenders whose sentences ensured they would die in prison." (*Ibid*.)

When section 1170, subdivision (d)(2) was enacted, youthful LWOP offenders were not entitled to parole hearings pursuant to section 3051, subdivision (b)(4). (See § 1170, subd. (d)(2), added by Stats. 2012, ch. 828, § 1, eff. Jan. 1, 2013; § 3051, subd. (b)(4), added by Stats. 2017, ch. 684, § 1.5, eff. Jan. 1, 2018.) At that time, it was thus rational for the Legislature to create a resentencing remedy for those youthful LWOP offenders. But now that youthful LWOP offenders are parole-eligible pursuant to section 3051, providing them but not youthful offenders, like Ontiveros, with resentencing hearings may result in disparate treatment devoid of a rational basis. As our Supreme Court declared over 50 years ago: "The governing constitutional test, again, is whether a statute's classification bears a rational relation to a legitimate state interest; a classification which once was rational because of a given set of circumstances may lose its rationality if the relevant factual premise is totally altered." (*Brown v. Merlo* (1973) 8 Cal.3d 855, 869.)

Defendants sentenced to LWOP have committed special circumstance murders that are " 'more severe and more deserving

4

of lifetime punishment than nonspecial circumstance first degree murder.' " (*Heard, supra*, 83 Cal.App.5th at p. 633.)  "Under California law, special circumstance murder is a uniquely serious offense, punishable only by death or life without possibility of parole." (*Hardin, supra*, 15 Cal.5th at p. 839.)  Yet, these youthful offenders convicted of special circumstance murders are treated more leniently than offenders who received less severe punishment.  I question whether the disparate treatment here can still be justified under rational basis review.

NOT TO BE PUBLISHED.


BALTODANO, J.

Richard M. Goul, Judge

Superior Court County of Los Angeles

_____

Bess Stiffelman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.