Filed 12/22/25  P. v. Polk CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C101440 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-FECOD-2023-0000207) |
| v. | |
| GAMONI POLK, | |
| Defendant and Appellant. | |

A jury found defendant Gamoni Polk guilty of assault with a semiautomatic firearm, second degree robbery, and making criminal threats while personally using a firearm during the offenses and being a felon in possession of a firearm and ammunition. The trial court found defendant had a prior strike and a prior serious felony conviction. The trial court struck the prior serious felony enhancement and the firearm enhancements on the robbery and criminal threat counts but declined to strike the firearm enhancement on the assault count or defendant's prior strike conviction.  Defendant was sentenced to a determinate term of 28 years in prison.

1

Defendant appeals, arguing the trial court abused its discretion by refusing to dismiss the remaining firearm enhancement and strike his prior strike conviction. Finding no merit to his contentions, we shall affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

In January 2023, defendant and several cohorts robbed Delores P. and her husband at gunpoint outside their Stockton home while the victims were putting air in their car tires. Two men with guns surrounded Delores on the sidewalk and demanded money. One man wore a mask and held a gun to her head. The other man, who was not wearing a mask, pointed a black .9 millimeter gun at her chest, demanded money, and threatened to kill her if she did not comply. Delores gave the man without the mask several hundred dollars that she had in her pocket. Delores's husband said three different people wearing masks surrounded him on the other side of the car; one put a gun to his head and the group took his money. The robbers fled, and Delores immediately called police.

A short time later, police located defendant hiding under a truck a few blocks from Delores's home. Police recovered a loaded semiautomatic handgun underneath the truck where defendant was hiding. Defendant had over $135 in cash in his back pocket that belonged to Delores. During an infield show-up, Delores said she was 70 percent sure defendant was the man without the mask who took her money at gunpoint. At trial, Delores identified defendant as the man without the mask, and she said the gun recovered from under the truck looked like the gun defendant pointed at her during the robbery.

Defendant's girlfriend testified that on the night of the robbery she and defendant had gone to dinner in Stockton, and she did not see him with a gun. She also said that two weeks prior she had given him $15,000.

A jury found defendant guilty of second degree robbery (Pen. Code, § 211, count 1; statutory section citations that follow are to the Penal Code); assault with a semiautomatic firearm (§ 245, subd. (b), count 2); criminal threats (§ 422, subd. (a),

2

count 3); and being a felon in possession of a firearm (§ 29800, subd. (a)(1), count 4) and ammunition (§ 30305, subd. (a)(1); count 5). The jury found true that defendant personally used a firearm during the robbery, assault, and criminal threat offenses (§§ 12022.53, subd. (b) [count 1], 12022.5, subd. (a) [counts 2, 3]).

In the court trial that followed, the court found, based on certified records of conviction, that defendant had a 2019 robbery conviction, which constituted a prior strike (§§ 1170.12, subd. (b), 667, subd. (d)) and a prior serious felony (§ 667, subd. (a)). The trial court also found several aggravating circumstances true, including that defendant had engaged in violent conduct indicating a serious danger to society, his prior convictions were numerous and of increasing seriousness, and he had served a prior prison term. (Cal. Rules of Court, rule 4.421(b)(1)-(b)(3).)

Before sentencing, defendant moved to strike his prior strike conviction pursuant to section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. In the same motion, defendant also asked the trial court to strike one or more of the firearm or prior serious felony enhancements under amended section 1385, subdivision (c). The People opposed the *Romero* motion and requested the court impose only a single firearm enhancement on the principal count of assault with a semiautomatic weapon.

The trial court denied the *Romero* motion, and struck the five-year prior serious felony enhancements (§ 667, subd. (a)) as well as the firearm enhancements on the subordinate robbery and criminal threat counts (counts 1 and 3), but declined to strike the firearm enhancement on the principal assault count (count 2). The court sentenced defendant to the upper term of nine years for the assault with a semiautomatic firearm offense, doubled to 18 years for the strike prior, plus the upper term of 10 years for the section 12022.5 firearm enhancement. The court imposed doubled, midterm sentences for each of the remaining counts, but stayed those terms under section 654.

Defendant timely appealed.

DISCUSSION

I

*Motion to Strike Firearm Enhancement*

Defendant contends the trial court abused its discretion by applying an incorrect legal standard under amended section 1385, subdivision (c)(2) when determining whether to dismiss the remaining section 12022.5 enhancement on the assault conviction. Relying primarily on *People v. Gonzalez* (2024) 103 Cal.App.5th 215 (*Gonzalez*), defendant asserts the court erred by considering only whether he *currently* posed a danger to the public rather than considering dangerousness at the time he would be released if the enhancement were dismissed.

A. <u>Additional</u> <u>Background</u>

When ruling on defendant's motion to dismiss each of the prior serious felony and firearm enhancements that were found true, the trial court considered the mitigating circumstances enumerated in amended section 1385, subdivision (c) that favor dismissal of enhancements under certain circumstances. After striking all but one of the enhancements, the court then considered whether to strike the remaining section 12022.5 firearm enhancement on the assault count, noting the enhancement could result in a sentence exceeding 20 years (§ 1385, subd. (c)(2)(C)) and that defendant had suffered childhood trauma while in foster care (§ 1385, subd. (c)(2)(E)).

The trial court declined to strike the sole remaining firearm enhancement and expressly selected the upper term, rather than the lower or middle term, which added 10 years to defendant's 18-year sentence for a total of 28 years in prison. In reaching its decision, the trial court balanced the aggravating circumstances proven at trial, including defendant's violent conduct, his numerous prior offenses, and his prison history, against defendant's relative youthfulness when he committed the crimes since he had committed them before the age of 26 and his difficult childhood. While the court was "sympathetic"

4

that defendant had been raised in foster care, it emphasized it had "to balance mercy with justice. And in this case, in this situation with this victim, justice is a 28-year sentence."

According to the trial court, defendant had "specifically . . . demonstrated that his conduct has endangered public safety." Despite being a long-time felon, defendant "continues to have firearms" and "continues to rob people." And during the present offense, defendant "psychologically" injured the victim by pointing a loaded gun at her heart and threatening to kill her, and "very easily with the slip of the finger that firearm could have gone off," which was "extremely, extremely dangerous behavior." The probation report, which the court had reviewed, assessed defendant's future risk of reoffending as "high violent."

Given the 28-year term, the trial court recognized defendant likely would be released when he was in his 40's. Because some studies had shown people mature and get less violent in their 40's, the court hoped by the time defendant was released he would "decide to leave this type of behavior behind."

B.    Standard of Review

We review a trial court's decision whether to strike or reduce an enhancement under section 1385 for an abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*People v. Carmony* (2004) 33 Cal. 4th 367, 376-377.) "The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) But " 'an abuse of discretion arises if the trial court based its decision on impermissible

5

factors . . . or on an incorrect legal standard.' " (*Gonzalez, supra*, 103 Cal.App.5th at p. 225.)

C.    Analysis

Section 1385, subdivision (c)(2), added by Senate Bill No. 81 (Stats. 2021, ch. 721, § 1) (Senate Bill 81), provides that a sentencing court "[i]n exercising its discretion" to dismiss a sentencing enhancement "shall consider and afford great weight to evidence offered by the defendant to prove" certain enumerated mitigating circumstances, and "[p]roof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." In this context, "endanger public safety" means "there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)

In *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*), our Supreme Court rejected the argument that section 1385, subdivision (c)(2) creates a rebuttable presumption in favor of dismissal of an enhancement unless a sentencing court finds that dismissal would endanger public safety. (*Walker*, at p. 1029.) Instead, "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*Ibid.*) "In other words, if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Id.* at p. 1029.)

*Walker* did not specifically address the exact issue presented here—whether a trial court must consider a defendant's *future* (as opposed merely to *current*) dangerousness if

6

dismissal were granted. That issue, however, was addressed in *Gonzalez, supra*, 103 Cal.App.5th 215.

The defendant in *Gonzalez* was found guilty of first degree murder with a gun use enhancement (§ 12022.53, subd. (d)) and sentenced to 75 years to life, including a term of 25 years to life for the firearm enhancement. (*Gonzalez, supra*, 103 Cal.App.5th at p. 220.) The trial court declined to dismiss the firearm enhancement because it concluded the defendant presently represented a danger to society. (*Id.* at p. 224.) The appellate court reversed, finding that "[t]he plain words of the statute do not support the trial court's singular focus on whether the defendant *currently* poses a danger." (*Id.* at p. 228.)

The *Gonzalez* court emphasized that section 1385, subdivision (c)(2) focuses on the danger associated with *the dismissal of an enhancement*. (*Gonzalez, supra*, 103 Cal.App.5th at p. 228.) "Although the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence." (*Ibid.*) "A currently dangerous defendant who will be released from prison within a short timeframe might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until he is elderly." (*Ibid.*) The court also noted that, for indeterminately sentenced defendants, the dangerousness inquiry should also take into account that the defendant's release from prison is contingent on review by the Board of Parole Hearings, which will have the opportunity to reassess a defendant's dangerousness at that time and will act as a "safety valve" against release that would endanger the public. (*Ibid.*; see also § 3041, subd. (b)(1) [public safety considered at parole hearings].)

Defendant argues the trial court erroneously focused on his present dangerousness instead of his future dangerousness at the time of his release assuming the enhancement was stricken. The People concede the issue, although they argue any error was harmless

because the court properly considered whether defendant should receive a sentence of less than 28 years and decided against it. We do not accept the People's concession regarding the court's consideration of future dangerousness. (*People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1021 [reviewing court not bound by Attorney General's concession that reversible error occurred].)

It is true that in declining to strike the firearm enhancement the trial court found defendant "specifically has demonstrated that his conduct has endangered public safety," which implies the court believed defendant was currently dangerous. But the trial court's detailed analysis did not end there. Rather, the court also considered that defendant was only 24 years old at the time of sentencing and would likely be in his 40's when released if the enhancement was not stricken. The court observed that studies showed persons in their 40's tended to become less violent around that age, and the court hoped the same would apply to defendant. A necessary corollary to the court's observation is that it reasonably believed persons younger than 40 years of age with long, violent criminal histories like defendant's continued to pose a future public safety risk until such time as they had reached their 40's and matured. Had the court stricken the enhancement, defendant would have served 85 percent (§ 2933.1) of an 18-year sentence with nearly two years of presentence credit already accrued. Defendant would have been released before the age of 40, when the future risk to public safety remained high.

Thus, unlike in *Gonzalez*, where the trial court "singular[ly] focus[ed]" on whether the [indeterminately sentenced] defendant *currently* posed a danger (*Gonzalez, supra*, 103 Cal.App.5th at p. 228), the trial court's dangerousness finding here was not so limited. We conclude it adequately considered both current and future dangerousness when considering whether to strike the enhancement.

And while dangerousness was one aspect of its analysis under section 1385, subdivision (c), the trial court properly balanced a multitude of proven aggravating factors against defendant's cited factors in mitigation before determining that striking the

section 12022.5 enhancement, or imposing a lesser term on the enhancement, would be contrary to the interests of justice, especially given that the court had already stricken the prior serious felony enhancements as well as the firearm enhancements found true on the robbery and criminal threat offenses. As courts have recognized, section 1385, subdivision (c) calls for a "holistic balancing with special emphasis on the enumerated mitigating factors." (*People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1096; *Walker, supra*, 16 Cal.5th at pp. 1035, 1037 [endorsing *Ortiz*'s approach].) But the statute also "reflects a legislative recognition that a trial court's exercise of sentencing discretion involves more than a strictly binary weighing of mitigation against public safety." (*Ortiz*, at p. 1097.) "[T]he ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement." (*Id.* at p. 1098.) The trial court here did not abuse its discretion when it determined striking the one remaining firearm enhancement on the assault count was contrary to justice.

II

*Denial of Romero Motion*

Defendant next asserts the trial court abused its discretion by denying his *Romero* motion to strike the prior strike conviction. We find no abuse of discretion here because the record reveals the court was aware of its discretion to strike defendant's prior felony conviction and considered the relevant factors in making its decision.

A.    Additional Background

In his *Romero* motion, defendant argued that several section 1385, subdivision (c) factors (relating to dismissing enhancements) militated in favor of striking his prior strike conviction. He noted applying the strike would result in a sentence of over 20 years, he was youthful (age 18) when he committed the strike, and the offense was committed more than five years ago. (§ 1385, subds. (c)(2)(C), (G), (H).) Defense counsel also

9

argued at the hearing that defendant had suffered childhood trauma because he was in foster care from a young age. (*Id.* at subd. (c)(2)(E).)

The People opposed the *Romero* motion, arguing defendant did not fall outside the spirit of the Three Strikes law. They asserted defendant's prior convictions were "numerous, serious, and violent." His certified rap sheet and the probation report showed a lengthy criminal history, including a significant juvenile adjudication record and a prior adult record. In addition to his 2019 adult robbery conviction (the strike offense), he also had two prior juvenile strikes for attempted robbery and robbery that the People had elected not to allege in the present case. According to the probation report, defendant received 13 informal and three formal write-ups for jail rule violations while awaiting trial, including for "yell[ing] aggressively at an officer inside his unit," engaging in "mutual combat with another inmate," and being "sanctioned for boisterous conduct, being in an unauthorized area, and disobeying housing guidelines."

In addition, the People noted defendant had scored "high violent" in the probation department's static risk and offenders need assessment. Moreover, defendant showed no remorse and refused to take responsibility for his violent conduct in the present case despite the overwhelming evidence showing he shoved a loaded gun to the victim's chest and threatened to kill her if she did not hand over her money.

In denying the motion, the trial court first noted that the section 1385, subdivision (c) factors defendant cited in support applied to enhancements but not prior strike convictions because the Three Strikes law is an alternate sentencing scheme and not an enhancement. After considering the nature and circumstances of defendant's present and past felony convictions, the particulars of his background, character, and prospects, his constitutional rights, the remoteness of the strike, defendant's conduct between the prior strike and the current offenses, his youthfulness, and how he performed when released on supervision, the court found defendant did not fall outside the spirit of the Three Strikes law.

B.      Legal Principles

A trial court has discretion to strike a prior serious felony conviction only if the defendant falls outside the spirit of the Three Strikes law. (*People v. Williams* (1998) 17 Cal.4th 148, 161.) "[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony, supra,* 33 Cal.4th at p. 378.) In deciding whether to strike a prior conviction, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, at p. 161.)

The trial court's "failure to . . . strike a prior [felony] conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 374.) A trial court abuses its discretion when it refuses to strike a prior felony conviction only in limited circumstances, such as where the court is unaware of its discretion to dismiss or considers impermissible factors in refusing to dismiss, or if the sentencing norm under the Three Strikes law leads, as a matter of law, to an arbitrary, capricious, or patently absurd result under the circumstances of the individual case. (*Ibid.*) It is not sufficient to show that reasonable people might disagree about whether to strike a prior conviction. (*Id.* at p. 377.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Ibid.*)

11

C.     Analysis

Defendant argues the trial court relied too heavily on his criminal history and did not give enough weight to the mitigating factor of his youthfulness when he committed the strike.  He also cites various legislative enactments such as the Three Strikes Reform Act of 2012 (Proposition No. 36) and Senate Bill 81, among others, to show the prevailing notion of what constitutes a "unjust sentence" has changed over the last decade and that these legislative changes demonstrate the trial court's denial was "outside the bounds of reason."  None of his arguments has merit.

Defendant concedes his recidivist status was "undeniably relevant" to the trial court's determination.  (*People v. Garcia* (1999) 20 Cal.4th 490, 501.)  His violent criminal history, as the trial court rightfully noted, was extensive and often involved firearms.  In fact, defendant had repeatedly engaged in criminal endeavors for nearly a decade before he committed the current offenses.

As the court explained, in 2015 the juvenile court sustained a petition for felony evading a peace officer.  In 2016 and 2017, the juvenile court sustained two more petitions for attempted robbery and robbery, respectively, which both constituted juvenile strikes.  Throughout this same period, defendant was arrested for carjacking, first degree burglary, hit and run with property damage, and driving without a license.

In 2018, defendant committed the robbery that is the subject of his adult strike offense; he was convicted in 2019 and sentenced to three years in prison.  In that same case, defendant was also charged with being a felon in possession of a firearm and ammunition, and carrying a loaded firearm, but those charges were dismissed when he pleaded to the robbery.  And in 2023 defendant committed the present offenses, including assault with a semiautomatic firearm, robbery, and criminal threats.  Based on this evidence, the court reasonably concluded defendant's long history of committing violent offenses weighed against striking the strike prior.

Although it is true, as defendant argues, that youth can be a relevant mitigating factor to the nature and circumstances of a strike offense, a defendant's age at the time of the offense is not dispositive. (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1141-1142.) Here, defendant's relative youth at the time of the strike offense (18 years old) does not mean the trial court abused its discretion by denying defendant's *Romero* motion. Given defendant's nearly unbroken chain of violent criminality as he aged, recounted in the trial court's ruling, the court could reasonably conclude the seriousness of defendant's offenses were increasing and not decreasing with the presumed maturity that accompanies growing maturity. The court could also reasonably conclude defendant's earlier strike conviction was not the product of youthful immaturity but rather his tendencies to commit violent crimes like the assault, robbery, and criminal threat convictions here.

The trial court also reasonably concluded defendant's strike offense was not remote in time from his current offenses. (See e.g., *People v. Avila, supra*, 57 Cal.App.5th at p. 1141 [recognizing there was a "significant lapse of time" between the defendant's current offenses and his strike offenses, which were 28 and 26 years old]; but see *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813 [age of 20-year-old conviction not determinative where the defendant had not led a "legally blameless life" since his last strike conviction].) Here, defendant was paroled on the strike offense in December 2020, he was discharged from parole in December 2022, and he committed the current violent felony offenses with a loaded firearm in January 2023, less than a month after being discharged from parole for the strike offense.

That the Legislature or electorate have amended various sentencing laws in recent years does not mean the trial court erred on the law given these sentencing circumstances in denying defendant's *Romero* motion or otherwise imposed an "unjust" sentence. We note defendant does not raise a cruel and unusual or excessive punishment argument, and he has already benefitted from some of the cited legislative changes, including when the

13

trial court imposed only a single firearm enhancement and struck the prior serious felony and additional firearm enhancements pursuant to section 1385, subdivision (c) as amended by Senate Bill 81.

The trial court appropriately balanced defendant's age and background and the remoteness (or lack thereof) of the strike against the seriousness of the present offenses and defendant's extensive criminal history, which included nearly continuous criminal exploits over nearly a 10-year period, some of which also involved a firearm as in this case. After evaluating and weighing all these factors, the trial court found defendant was not outside the spirit of the Three Strikes scheme. The court did not abuse its discretion in reaching this conclusion.

## DISPOSITION

The judgment is affirmed.

\_\_\_\_/s/_____
HULL, Acting P. J.

We concur:

\_\_\_\_\_/s/_____
RENNER, J.

\_\_\_\_\_/s/_____
MESIWALA, J.

14